## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

CHESAPEAKE & OHIO RAILWAY CO. V. CHAMBERS.

JANUARY 20, 1898.

Absent, Riely and Cardwell, JJ.

1. CONDEMNATION FOR DAM AND GUARD BANK—*Failure to Repair— Resulting Damages.*—Although damages may have been regularly assessed and paid for land condemned for a dam, abutment, and guard bank, and for the increased liability to overflow the residue of the land of the plaintiff, the defendant is still liable for any injury resulting to the plaintiff by reason of defendant's failure to keep the guard bank in a reasonably safe and good condition.

2. FAILURE TO REPAIR GUARD BANK—*Resulting Damages—Measure of.*— In an action to recover damages for an injury inflicted on the plaintiff by reason of the negligent failure of the defendant to keep in order a guard bank by reason whereof plaintiff's land was flooded, plaintiff can only recover for the injury suffered in respect to the land after the date of his purchase thereof and before the institution of the suit.

Error to a judgment of the Circuit Court of Fluvanna county rendered April 11, 1896, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The evidence sufficiently appears in the opinion of the court. The third instruction given by the trial court was as follows:

"The court further instructs the jury that alleged negligence is the foundation of this action, which is the absence of such care as a reasonably prudent man would exercise under the circumstances, and even though you may believe from the evidence that the J. R. & K. Ca. Co. acquired title to said dam, abut-

ment, and guard-bank, by process of condemnation, and paid to the then owner the damages likely to result to his lands by reason of its increased liability to overflow, yet the condemnation was based upon the assumption that the structures would be skilfully built, and reasonably cared for and protected, and if you believe from the evidence that the defendant negligently permitted the guard-bank to get out of repair, and by reason of such negligence, the plaintiff suffered damage to his lands, which he would not have sustained if said guard-bank had been reasonably maintained, then you may find for the plaintiff such damages as you may believe from the evidence he sustained thereby. But even if you believe from the evidence that the plaintiff's land was injured by the washing away of the guard-bank or a portion thereof, it does not necessarily follow that the defendant is liable to the plaintiff for damages, unless the washing away resulted from defendant's negligence, and negligence in respect to a structure of this kind is allowing it to get in such a condition that a reasonably prudent man would have apprehension that the same would be washed away by such freshets as were likely to occur in said river."

*A. K. Leake, Henry Taylor, Jr.,* and *H. T. Wickham,* for the plaintiff in error.

*F. C. Moon* and *Daniel Harmon,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

D. L. Chambers sued the C. & O. Railway Co., in the Circuit Court of Fluvanna county, and states the following cause of action:

The defendant owns, occupies, and manages a dam on James river, in Fluvanna county, which extends from the north bank of the river to an island in said river called "Shores Island," and a part of the dam, called a guard-bank, extends partly across

that island.   This dam was occupied and maintained by the defendant, and by it the waters of James river were dammed up and water power was furnished to certain mills for which the defendant received compensation.   The plaintiff then avers that, at the time the grievances complained of were committed, she was the owner of a part of said island containing about 60 acres—10 acres situated above the dam, and 50 acres below it—consisting of very rich and valuable land used for agricultural purposes, and that by reason of the construction and maintenance of the dam in time of high water, unless the guard-bank referred to was kept in good order, her land lying below the dam, and any crops thereon, were washed and overflowed, and that it was the duty of the defendant to keep the guard-bank in good order, and so to provide that no injury would be done the plaintiff.

She then avers that the defendant, not regarding its duty in that behalf, negligently and wilfully permitted the guard-bank to get out of repair, by reason whereof the island was greatly damaged, and rendered of little or no value for any purpose.

In the second count substantially the same facts are charged, and the same duties averred, with the additional statement that the dam was originally erected by the James River and Kanawha Company, and that, by virtue of various Acts of Assembly passed from time to time, and sales and transfers made under the authority of said acts, all the works, franchises, rights, privileges and property of every kind of that company, including the dam and guard-bank thus originally erected · by it, had passed to and vested in the defendant company, the C. & O. Railway, which thereupon took possession of, and manages and controls the same, and that, by reason of the premises, there devolved upon it the duty of keeping the guard-bank in good order.

To this declaration there was a demurrer, which was properly overruled.   It states with precision the duty owed by the defendant to the plaintiff, the negligent performance of which has caused damage.   The defendant pleaded "not guilty," and, dur-

ing the trial before the jury, exceptions were taken to certain rulings of the court; and a verdict having been rendered for the plaintiff, the defendant brings the case before this court upon a writ of error.

It is not disputed that whatever duties rested upon the James River and Kanawha Co. in and about the construction, maintenance, and management of the dam and guard-bank in question, have devolved upon the defendant company.

The defence chiefly relied upon is that when the dam was constructed by the James River and Kanawha Company, the island belonged to Chastaine Shores, and that, by virtue of proceedings taken under the law in such case made and provided, assessors were appointed who ascertained the damage to result to him from the construction of the dam.

The assessors met, assessed the damages and they were paid, but the condemnation proceedings, or so much of them as has been preserved, failed to disclose the sum awarded, or the particular elements of damage considered by the assessors.

On behalf of the plaintiff it is contended that the dam, its abutment, and the curtain dike or guard-bank, which extends from the abutment proper, at the south end of the dam, partly across the island, tending slightly up the stream, all constitute parts of the same structure, and are parts and parcels of the dam.

On behalf of the defendant, the contention is that the guard-bank was not built until some time after the completion of the dam across the north arm of the river, and that it was placed there, not for the purpose of protecting the land of Chastaine Shores from injury, but to preserve the abutment of the dam. The evidence upon this point is that the abutment rests upon the bed rock of the river, and strongly tends to show that the guard-bank was wholly unnecessary to the safety of the abutment, and indeed that so far from promoting its safety, it turned the force of the water from the island, and upon the dam, which would have the effect rather of endangering it, than of contributing to

its preservation.   It is shown that a half acre of land was condemned for the abutment, an area wholly unnecessary in the limited sense in which the term abutment is defined by the defendant company, but not more than was reasonably sufficient if the guard-bank is to be considered as constituting a part of it. There is evidence that the effect of the guard-bank was to divert the water from the island, and that while it was kept in repair no serious damage was done by the floods.   There is also evidence that those under whom the defendant claims kept this guard-bank in repair, but that having been neglected, it has yielded to the destructive influence of the elements and no longer subserves any useful purpose.   There is evidence that the land had been damaged to an amount equal to the sum ascertained by the jury.

The case is before us as upon a demurrer to the evidence, Code of Va., sec. 3484; and, measured by that rule of decision, the evidence is quite sufficient to sustain the verdict.

Upon the trial the defendant asked for two instructions, the first of which was given by the court, and the second was given with a modification which rendered it objectionable to the defendant.   As offered by the defendant, the second instruction tells the jury that the James River and Kanawha Company, under its charter and the laws of Virginia, could not lawfully condemn the land of any person for any other use than that of its incorporation, and that if they believe from the evidence that the James River Company constructed the dam, and caused the land of Chastaine Shores to be condemned for an abutment, and that the guard-bank was a part of the abutment built upon land so condemned for the purpose, then the jury were instructed, as a matter of law, that the dam, abutment, and guard-bank were structures of the same nature, erected for the same public purposes; and if they believe that the damages for the land condemned, and for the increased liability to overflow the rest of the island, were regularly assessed and paid to Chastaine Shores,

then the plaintiff is not entitled to recover of the defendant in this action.

To this the court added as follows: "Unless the jury should believe from the evidence that damage resulted to the plaintiff from the negligent management or use of the dam, abutment, or guard-bank."

This addition was eminently proper. The hypothetical case stated by the defendant may have been true, and the defendant would still have been liable for injury resulting to the plaintiff by reason of the defendant's failure to keep the structure which it had been authorized to erect in a reasonably safe and good condition.

The third instruction given by the court is but an elaboration of the proposition contained in the addition made to instruction No. 2. It is a clear, accurate, and careful statement of the law as applied to the evidence in this case.

The fourth instruction tells the jury that if they believe from the evidence the plaintiff is entitled to recover damages, then, in estimating those damages, they could only consider the injury suffered by the plaintiff in respect to her land between the time of her purchase and the institution of the suit. This confines the jury within proper limits, and is free from objection.

Upon the whole case we are of opinion that there is no error in the judgment of the Circuit Court, and it is affirmed.

*Affirmed.*